MANEY MILLING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7704. Promulgated January 7, 1929.

1002

*Chester A. Gwinn, Esq.*, for the petitioner.
*Bruce A. Low, Esq.*, and *George S. Herr, Esq.*, for the respondent.

VAN FOSSAN: The first issue presented for our consideration is whether or not the petitioner is entitled to deduct from its gross income the sum of $7,500 entered on its books on December 31, 1920, as a reserve to cover a contingent liability to the Nebraska Power Co., occasioned by the increase of its electric service rates during the period from August to December, 1920, both inclusive. The record discloses that at no time during 1920 did the petitioner admit its liability to pay the increased rates charged to it by the Power Company under the ordinance authorizing such increases. The contrary appears and the petitioner continued to protest against and oppose the higher rates as unwarranted and the ordinance as invalid, until April, 1923, when an adjustment of the controversy was effected through a compromise settlement. In *Bump Confectionery Co.*, 4 B. T. A. 50, we held as follows:

* * * Conceding that it may be proper to accrue any approximation, it is certainly essential that there be a recognized obligation to pay before one's right to accrue arises, and a mere liability to suit is not sufficient. Where the liability is denied and the injured party takes no action to compel payment, there is no basis for an accrual, and any amount set up on the books to take care of this liability would be in the nature of a contingent reserve which, as we have held in the *Appeal of Consolidated Asphalt Co.*, 1 B. T. A. 79, is not permitted under the Revenue Acts.

See also *Brighton Mills*, 1 B. T. A. 392; *New Process Cork Co.*, 3 B. T. A. 1339; *Empire Printing & Box Co.*, 5 B. T. A. 203; and *Hidalgo Steel Co.*, 8 B. T. A. 76. In the absence of an accurate statement allocating to each month its proper proportion of the $3,800 paid under the compromise settlement, the respondent assigned to each month an equal part thereof. Thus, the petitioner was permitted to deduct $575.75 as a proper charge for the excess electric service. Such allowance was made under the theory set forth in *Producers Fuel Co.*, 1 B. T. A. 202, and we are not inclined to disturb the respondent's action. The petitioner is not entitled to the deduction claimed in its first assignment of error.

Passing to the second issue, the following facts are noted. On October 13, 1920, the petitioner entered into a contract with Hallett & Carey for the sale of 25,000 bushels of wheat under certain terms and conditions. On that date it made no entry on its books but exchanged memoranda with Hallett & Carey setting forth the detailed conditions governing the transaction. On November 15, 1920,

it shipped to Hallett & Carey 20,166.40 bushels of wheat and entered as a charge on its books against that firm the item of $46,383.33, the value of the shipment. As a matter of bookkeeping, the account of Hallett & Carey was credited with the same amount when a draft with bill of lading attached was sent through the bank to be collected from Hallett & Carey prior to its receipt of the wheat and acquisition of title thereto. The consignee attempted to cancel its contract by its telegram of November 15, 1920, on the ground that the contractual time limit had expired. It also refused to accept the shipment of wheat and to honor the draft with the bill of lading attached. Subsequent entries of the petitioner clearly indicate that it accepted the purchaser's repudiation and attempted cancellation of its contract as a refusal to comply with its terms, thereby warranting and possibly requiring the petitioner to make a resale or a new sale of the wheat in transit. Such a sale was made to E. E. Huntley for $33,980.83, and by reason of the crediting of the proceeds therefrom to the account of Hallett & Carey resulted in a decrease of $12,492.38 in the amount which the petitioner deemed itself entitled to receive from the original shipment of November 15, 1920. In this sum there were included charges for protest fees and the cost of the option.

We do not deem it necessary to determine what the status of the transaction between the petitioner and Hallett & Carey may have been on October 13, 1920, nor to ascertain the motive which may have prompted the petitioner to charge off to profit and loss the balance remaining in the Hallett & Carey account. In any event, the effect of the dealings between the petitioner and Hallett & Carey based on their contract of October 13, 1920, and consummated during the taxable year, was to create and to extinguish as an item of actual or potential income the profit of the 20,166.40 bushels of wheat shipped thereunder.

We have held repeatedly that in order that bookkeeping methods and individual entries may be taken as a basis for determining income tax, they must reflect true income. Bookkeeping entries are evidentiary and not conclusive. We must look to the transactions to which such entries purport to relate and for which they serve as a record before we can arrive at a proper conclusion as to their true character and their effect on income. *Chatham & Phenix National Bank*, 1 B. T. A. 460; *Henry Myer Thread Mfg. Co.*, 2 B. T. A. 665; *Cleveland Woolen Mills*, 8 B. T. A. 49; *Pacific Coast Pipe Co.*, 11 B. T. A. 1329; *Henry S. Parker*, 11 B. T. A. 1336; and *Luther Elkins*, 12 B. T. A. 1058.

By reason of the repudiation and attempted cancellation of the contract of October 13, 1920, on the part of Hallett & Carey, the character of the item appearing on the petitioner's books as an entry

presumably reflecting the dealings between the parties was transformed from an account receivable into a claim for damages for breach of contract. As such it had no place in the computation of the petitioner's income on an accrual basis.

Applying the principle set forth in *Florence Mills, Inc.*, 9 B. T. A. 579 (see also *Morrison Woolen Co.*, 10 B. T. A. 8), we are of the opinion that the sum of $12,492.38, representing the amount charged off to profit and loss from the account of Hallett & Carey and restored to income by the respondent was not a proper element of income, and we so hold.

*Judgment will be entered under Rule 50.*